**SO ORDERED.**

**SIGNED this 18th day of January, 2024.**



Dale L. Somers
United States Chief Bankruptcy Judge

Designated for print publication
## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| In re: | Case No. 21-10123-12 |
| Jarett B. Sis<br>Rose Marie Sis,<br>    Debtors. | |
| Jarett B. Sis and Rose Marie Sis,<br>    Plaintiffs, | |
| Banner Capital Bank,<br>    Defendant. | Adv. No. 23-5040 |

## Memorandum Opinion and Order Memorializing Denial of Motion for Temporary Restraining Order

Debtors Jarett and Rose Sis filed this adversary complaint to seek an injunction under 11 U.S.C. § 105(a)[1] to re-impose the automatic stay to allow

---

[1] All future references to Title 11 in the text shall be to the section number

Debtors time to modify their Chapter 12 plan and make payments to Banner Capital Bank before a state court foreclosure of their real property by the Bank. Debtors then filed a motion for temporary restraining order, seeking expedited consideration of their requested relief. The Court held an expedited hearing,[2] and orally denied Debtors' motion. The Court now issues this written ruling to memorialize its decision.

## I. Procedural Background

Debtors operate a large farm in northwest Kansas, growing crops and raising cattle. Debtors' real property consists of five tracts of land in Rawlins County, Kansas, totaling approximately 1148 acres, containing their homestead and farmland. Debtors' farm equipment and vehicles are valued at more than $500,000.[3]

Prepetition, Debtors signed multiple promissory notes with Banner Capital Bank,[4] and multiple security agreements were signed giving the

---

only.

[2] Debtors appeared by Nicholas Grillot of Hinkle Law Firm, L.L.C. Counsel for Banner Capital Bank, Patricia A. Reeder of Woner, Reeder & Girard, P.A., made a limited appearance, as the Bank had not yet been served with Debtors' complaint. The Chapter 12 Trustee, Carl B. Davis, was not given notice of the adversary proceeding or the expedited hearing addressed herein and did not appear.

[3] Case No. 21-100123, Doc. 1 p. 20 (listing farm equipment with a total value of $429,209 and vehicles with a total value of $75,783).

[4] Specifically, Debtors signed one note on February 26, 2018, for principal of $305,000 with interest of 5.85%, one note on August 29, 2018, for principal of $830,000 with interest of 5.45%, a second note on August 29, 2018, for principal of

2

Bank a security interest in Debtors' personal and real property. At some point prepetition, Debtors became delinquent on their payments on those notes, and Banner Capital Bank filed a foreclosure action against Debtors' real property in state court in Rawlins County, Kansas.[5] The security interest given by Debtors to Banner Capital Bank on their real property was based on a real estate deed of trust,[6] although Debtors informed this Court the state court ruled at some point in the foreclosure case that the State of Kansas foreclosure statutes applied to the parties' relationship.

Debtors then filed a Chapter 12 petition on February 25, 2021. At filing, Debtors' Schedule D stated a claim to Banner Capital Bank of $1,292,234.85, secured in their property in Rawlins County, Kansas for $1,096,300, with the remaining $195,934.85 unsecured.[7] Per that Schedule D, Banner Capital Bank was the only entity with a security interest in Debtors' real property. Debtors also scheduled secured debt held by CNH Industrial Capital America (claims of $16,800 and $38,000 secured by a combine valued at $35,000, a swather valued at $75,000, and other equipment valued at $72,000), Community Credit Corporation (claim stated at zero but secured in

---

$13,059.46 with interest at 7%, and a third note on August 29, 2018, for principal of $50,000 with interest at 3.6%. Adv. No. 23-5040, Doc. 1 Exh. 3.

[5] *Id.*, Doc. 1 p. 50.

[6] *See id.*, Doc. 1 Exh. 2.

[7] Case No. 21-10123, Doc. 1 p. 24.

Case 23-05040    Doc# 13    Filed 01/18/24    Page 3 of 21

grain sorghum), Currency Capital LLC (claim of zero but secured by a turbo disc valued at $25,000), and Ford Motor Credit (claim of $4300 secured by a Ford Escape valued at $22,325).[8] Debtors owed real estate taxes for 2020 at filing of $5165.34, and then had $95,706.92 in other unsecured debt, mostly consisting of credit cards.[9]

The parties realized after Debtors' bankruptcy petition was filed that at some point prepetition, the security interest in Debtors' personal property held by Banner Capital Bank became unperfected when Banner Capital Bank failed to file a continuation statement of its perfection per Kansas statutes.[10] As a result, Debtors' proposed Chapter 12 repayment plan[11] was to re-amortize Debtors' debt to Banner Capital Bank, make payments to other secured creditors, and pay all unsecured creditors in full.[12] To do so, Debtors anticipated net disposable income of $133,143.54 in 2021, and with proposed total plan payments of $128,712.12 in the first year, Debtors estimated only a $4431.42 cushion to make their plan payments the first year.[13] Debtors

---

[8]  *Id.*, p. 24-27.
[9]  *Id.*, p. 29-37.
[10]  Case No. 21-10123, Doc. 39 p. 4 (citing Kan. Stat. Ann. § 84-9-515(a) and Kan. Stat. Ann. § 84-9-515(c).
[11]  The plan discussed herein was actually Debtors' amended plan, but for brevity the Court will refer to it as the plan.
[12]  *Id.*, Doc. 85 p. 1.
[13]  *Id.*, p. 24.

4

projected their 2022 income and expenses would remain essentially unchanged, but because attorney's fees would decrease, they would have a slightly larger cushion of $6931.42 for the 2022 plan year. The 2023 projections were approximately the same as stated for 2022.

Debtors' plan proposed a provision giving them a thirty-day cure period for any payment due under the plan. If cure was not accomplished in that thirty days, the impacted creditor could file a notice to cure. If payment was still not made within twenty-one days of that notice to cure, then the creditor would "thereafter have immediate relief from stay to pursue any and all foreclosure and other remedies available under state law."[14] Such stay relief would "not require any further order of the Court."[15] The proposed plan also contained a provision stating that confirmation of the plan would "continue to act as a stay of any action against Debtors, their property, or property of the Debtors' Estate until such time as Debtors have completed their payments under this Plan, this case has been dismissed, or Debtors have defaulted on their obligations under this Plan and the terms and conditions of this Plan provide for stay relief."[16] All assets would vest in Debtors at discharge, unless

---

[14] *Id.*, p. 7.
[15] *Id.*
[16] *Id.*, p. 9-10.

they requested an earlier vesting.[17]

Regarding the claim of Banner Capital Bank specifically,[18] Debtors proposed annual payments of $83,287.08 beginning November 1, and on each November 1 thereafter, with a thirty-year amortization. The Bank would be given a four percent interest rate for the first five payments, with the interest rate adjusting every five years to the prime rate plus 1.75%. The proposed plan stated the balance of Banner Capital Bank's claim, with interest and fees, was $1,453,784.19, with Debtors valuing the real property securing the claim at $1,527,700.[19]

Debtors' Chapter 12 plan was confirmed on February 11, 2022. The order confirming Debtors' plan modified the terms of the proposed plan in some respects. Regarding Banner Capital Bank,[20] Debtors made an adequate protection payment to the Bank of $81,840.39 to compensate the Bank for interest and fees. The interest rate to be paid the first five years of Debtors' plan changed from 4% to 4.75%, but Debtors were given a thirty-five-year amortization. In addition, the due date was changed from November 1 each

---

[17]  *Id.*, p. 6.
[18]  The Banner Capital Bank claim is treated in section 13.2 of Debtors' proposed plan, *id.*, p. 12-14.
[19]  The Proof of Claim filed by Banner Capital Bank stated a claim of $1,406,798.22 as of the petition date, with the value stated as "exceeds debt." Proof of Claim No. 7.
[20]  Case No. 21-10123, Doc. 115 p. 2-4.

6

year to August 31, with the first payment due August 31, 2022. Importantly here, the thirty-day grace period for making annual payments was *removed* from Banner Capital Bank's claim, meaning that "only" the twenty-one-day cure period applied.

Debtors had trouble making payments to Banner Capital Bank from the beginning, as the Bank filed a notice that its first payment of $83,223.29, due August 31, 2022, was not made.[21] Debtors provided notice that they made that payment on the twenty-first day of the cure period,[22] however, thereby avoiding stay relief being granted to Banner Capital Bank in 2022.

Another year passed, and Debtors found themselves in the same position, as Banner Capital Bank filed another notice that the annual payment was not made when due on August 31, 2023.[23] The notice was filed September 1, 2023, giving Debtors until September 22, 2023, to make the payment before stay relief would go into effect. Debtors filed a response to the notice, indicating the payment would not be made by the deadline, but that they hoped to obtain financing from Ag Resource Management to make the payment by the end of September 2023.[24]

---

[21] *Id.*, Doc. 125.
[22] *Id.*, Doc. 128.
[23] *Id.*, Doc. 133.
[24] *Id.*, Doc. 134.

About six weeks passed. The Court next heard from the Chapter 12 Trustee, who filed a motion to dismiss on November 6, 2023.[25] The motion stated Debtors were delinquent on plan payments, had failed to file operating reports in 2023, and had not provided copies of their 2021 and 2022 tax returns. Debtors filed a response, indicating financing to make the payment to Banner Capital Bank had "stalled" and Debtors were negotiating with other lenders to provide take-out financing for Banner Capital Bank.[26]

About the same time, a motion for relief from stay was filed by a new creditor, First Central Bank McCook, which was later amended.[27] First Central Bank McCook reported Debtors obtained five postpetition loans in the spring of 2022 from the Bank secured by Debtors' personal property, including crops, farm equipment, and livestock. None of the loans were obtained with bankruptcy court approval and First Central Bank McCook asserts it was not aware Debtors were in a pending bankruptcy case at the time the notes and security agreements were signed.[28] Debtors' total default

---

[25] *Id.*, Doc. 147.

[26] *Id.*, Doc. 157.

[27] *Id.*, Doc. 158, as amended in Doc. 164.

[28] Specifically, in First Central Bank McCook's original motion, it stated: "At all times pertinent to this Motion, the Bank did not know or understand that the Collateral was and is property of the bankruptcy estate. At all times during this Chapter 12 case, and particularly when the debtors sought and obtained the Loans and granted the Bank security interests in the Collateral, the debtors have been represented by counsel; however, the debtors and/or their attorney did not tell the

8

to First Central Bank McCook was stated at $236,431.81. Debtors dispute the assertion First Central Bank McCook was not aware of its bankruptcy, argue the Bank's alleged security interest is void and an unauthorized postpetition transfer of estate property subject to avoidance under § 549(a), contend the Bank is not entitled to retroactive stay relief, and dispute the alleged default amount asserted by First Central Bank McCook.[29]

Debtors then filed the above-captioned adversary proceeding on December 21, 2023.[30] In their complaint, Debtors seek an injunction under § 105(a) to re-impose the automatic stay to allow Debtors to modify their Chapter 12 plan and make their payment to Banner Capital Bank. In their complaint, Debtors allege that in June 2023 they sold cattle and received net proceeds from that sale of $135,497.90. Debtors applied the funds to the debt owed to First Central Bank McCook, and Debtors claim they were "induced"

---

Bank that the Collateral for the Loans was and is property of the bankruptcy estate." *Id.*, Doc. 158 p. 2-3 ¶ 6. The amended motion removes that paragraph and more simply states "the debtors sought and obtained the Loans and granted the Bank security interests in the collateral without telling the Bank that the Collateral was property of the bankruptcy estate." *Id.*, Doc. 164 p. 4 ¶ 16.

[29]  *Id.*, Doc. 174.

[30]  A summons was issued for service on Banner Capital Bank on December 22, 2023, Adv. No. 23-5040, Doc. 3, but no return of service of that summons has ever been filed. A certificate of service was filed December 26, 2023, indicating the adversary complaint, motion for temporary restraining order, and the motion and related order for expedited hearing were all emailed to counsel for Banner Capital Bank on December 22, 2023. *Id.*, Doc. 8.

to do so because First Central Bank McCook "assured" Debtors it would provide financing to either make the annual payment to Banner Capital Bank or to payoff Banner Capital Bank in full.[31] Debtors then learned in July 2023 that First Central Bank McCook would *not* provide additional financing, and it was at that point that they began searching for alternate funding.

The adversary complaint reported Banner Capital Bank filed a renewed request for sale in its state court foreclosure suit on October 11, 2023,[32] which was granted on November 29, 2023.[33] Debtors reported the sale of their real property was scheduled for December 28, 2023.

The day after filing the adversary complaint, Debtors then filed a motion for a temporary restraining order.[34] In their motion, Debtors asked for an order under § 105(a) enjoining Banner Capital Bank from selling the real property at the sale scheduled for December 28, 2023, in the state court foreclosure case.

The Court held a hearing on Debtors' motion for a temporary restraining order on December 26, 2023. Debtors argued the automatic stay should be reimposed, and that they will be able to modify their Chapter plan

---

[31] *Id.*, Doc. 1 p. 5 ¶ 22.
[32] *Id.*, Doc. 1 Exh. 4.
[33] *Id.*, Doc. 1 Exh. 5.
[34] *Id.,* Doc. 4.

under § 1229.[35] Debtors intend to fund the deficiency in their plan payments

with two sources. First, a $100,000 loan from a private investor, with semi-

annual, nine percent, interest-only payments, until the entire balance is due

in full on December 20, 2025. Second, Debtors plan to sell 155 acres of real

property for $1000 an acre, for a total sale price of $155,000. Debtors

acknowledge the real property is secured to Banner Capital Bank, and all

proceeds from the sale would go to that Bank. At the hearing, Debtors'

counsel proffered that Debtors had a poor wheat crop that had caused

difficulty with making prior payments, and that the funds borrowed from

First Central Bank McCook in 2022 were used for one-time expenses that

would not reoccur. At the conclusion of the hearing, the Court denied Debtors'

motion, ruling Debtors had not shown a likelihood of success on the merits,

and indicated it would issue a written opinion on the motion.

---

[35] Debtors filed a motion to modify in their Chapter 12 case on the same date
they filed their adversary complaint. Case No. 21-10123, Doc. 168. Debtors' motion
to modify in their Chapter 12 case was filed under § 1229(a)(2) and sought an
extension (to February 15, 2024) to make all delinquent payments. Debtors reported
in their motion to modify that they were delinquent on payments to CNH Industrial
Capital America, LLC for the 2021 and 2022 annual payments, and would be
delinquent on the 2023 annual payment due December 31, 2023 to that creditor as
well. The payments due to CNH Industrial Capital America, LLC totaled
$36,435.60, which included Chapter 12 Trustee's fees. In addition, Debtors reported
they were delinquent on payments to unsecured creditors for 2021 and 2022 and
would miss the 2023 payment to unsecured creditors as well, totaling $61,021.71,
which also included the Chapter 12 Trustee's fees. When adding the delinquent
payment due Banner Capital Bank, Debtors reported they were past-due for
payments of $189,153.71.

The next day, December 27, 2023, Debtors and the Chapter 12 Trustee submitted an order granting the Chapter 12 Trustee's motion to dismiss Debtors' Chapter 12 case.[36] As a result, the Court dismissed Debtors' case that afternoon, prior to the scheduled December 28, 2023 sale of the real property.

## II. Analysis

An adversary proceeding addressing a motion to modify the automatic stay is a core matter under 28 U.S.C. § 157(b)(2)(G), over which this Court may exercise subject matter jurisdiction.[37] Per Federal Rule of Bankruptcy Procedure 7001(7), proceedings "to obtain an injunction or other equitable relief" must be brought via an adversary proceeding.[38]

Debtors' motion seeks a temporary restraining order under Federal Rule of Civil Procedure 65, applicable to adversary proceedings via Federal

---

[36] *Id.* Doc. 172.

[37] This Court has jurisdiction pursuant to 28 U.S.C. § 157(a) and §§ 1334(a) and (b) and the Amended Standing Order of the United States District Court for the District of Kansas that exercised authority conferred by § 157(a) to refer to the District's Bankruptcy Judges all matters under the Bankruptcy Code and all proceedings arising under the Code or arising in or related to a case under the Code, effective June 24, 2013. D. Kan. Standing Order 13-1 printed in D. Kan. Rules of Practice and Procedure (March 2018).

[38] *See In re Gledhill*, 76 F.3d 1070, 1079 (10th Cir. 1996) ("Courts have uniformly held that a request to reimpose the automatic stay under 11 U.S.C. § 105(a) constitutes 'a proceeding to obtain an injunction or other equitable relief' under Rule 7001(7), which requires the filing of an adversary proceeding.").

Rule of Bankruptcy Procedure 7065. Under Rule 65(b), a temporary order may be issued without notice to the adverse party, but only if the movant can "clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Injunctive relief under Rule 65 "is an extraordinary remedy" and the movant seeking a temporary restraining order must show a "clear and unequivocal" right to the relief requested.[39] Under Rule 65, Debtors have the burden to show: (1) they are "likely to succeed on the merits," (2) they are "likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips" in Debtors' favor, and (4) that the temporary restraining order "is in the public interest."[40]

Regarding the merits of Debtors' requested relief, Debtors seek reimposition of the automatic stay under § 105(a) so they may seek modification of their Chapter 12 plan under § 1229. Debtors contend courts have issued injunctive relief using § 105(a) inherent power to reimpose the

---

[39] *Greater Yellowstone Coal v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003).

[40] *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Diné Citizens Against Ruining Our Env't v. Jewell*, 839 F.3d 1276, 1281 (10th Cir. 2016) (movant must show "(1) a substantial likelihood of prevailing on the merits; (2) irreparable harm unless the injunction is issued; (3) that the threatened injury outweighs the harm that the preliminary injunction may cause the opposing party; and (4) that the injunction, if issued, will not adversely affect the public interest").

13

automatic stay, and while correct,[41] the situations in which courts have done so are more limited than Debtors acknowledge.

Under § 105(a), this Court "may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." Debtors cite two cases in support of relief under § 105(a), but neither is persuasive based on the facts of this case. First, in *Twenver, Inc.*, the debtor filed a Chapter 11 bankruptcy petition and its primary secured creditor held a lien on almost all the debtor's property.[42] After a lengthy delay with no confirmed plan, the secured creditor sought relief from stay, arguing it was not adequately protected.[43] The unsecured creditor's committee opposed stay relief, but the bankruptcy court overruled its objections and granted the secured creditor's motion.[44] The committee then sought reconsideration of the bankruptcy court's ruling a very short time after it was entered, presenting new facts to the bankruptcy court about a viable reorganization plan.[45] The

---

[41] For example, cases have reimposed the automatic stay using § 105(a) authority when the stay has inadvertently lapsed under § 362(e) due to the court's crowded docket. *E.g., In re Flynn*, 582 B.R. 25, 29-31 (1st Cir. BAP 2018) (collecting cases)*; see also In re Wedgewood Realty Group, Ltd.*, 878 F.2d 693 (3d Cir. 1989) (same).

[42] *Chrysler Capital Corp. v. Official Comm. of Unsecured Creditors (In re Twenver, Inc.)*, 149 B.R. 950, 950 (D. Colo. 1993).

[43] *Id.* at 951.

[44] *Id.*

[45] *Id.* One week after the bankruptcy court's final order on stay relief, the committee moved to vacate, as it had learned of an offer to buy one of the debtor's

14

bankruptcy court ruled the committee had not met the standards for reconsideration of its orders, but reimposed the stay under its § 105(a) equitable powers.[46]

On appeal, the district court affirmed the bankruptcy court. The district court reasoned that there had been no foreclosure in the secured creditor's favor—the secured creditor had "not obtained vested rights in property in reliance on the bankruptcy court's order"—so the court could vacate or modify its order because there had been "limited reliance" thereon.[47] The district court then analyzed whether the bankruptcy court could reimpose the automatic stay under § 105, concluded the proper test for doing so was to apply the factors for assessing injunctive relief addressed above under Rule 65, and concluded the bankruptcy court had not abused its power by reimposing the automatic stay because it had applied the proper test.[48] The district court did not assess the application of the facts to the law,

---

television stations and under the purchase offer "and a corresponding reorganization plan, the assets of [the debtor] would not be liquidated, the station would continue to offer a variety of programming, and it would continue to employ approximately 40 persons," such that the Committee believed the situation "would be more favorable to unsecured and administrative creditors and no less favorable to" the secured creditor. *Id.*

[46] *Id.*
[47] *Id.* at 953.
[48] *Id.* at 953-54.

as the secured creditor had alleged no factual errors.[49]

In the second case, *Bryant*, issued ten years later, the debtors filed a Chapter 13 bankruptcy petition but later converted to Chapter 7.[50] While proceeding under Chapter 7, the creditor was granted stay relief to pursue foreclosure on the debtors' homestead.[51] The debtors then reconverted their case to Chapter 13, and filed a motion to reimpose the automatic stay as to their real property.[52]

The bankruptcy court first assessed the *Twenver, Inc.* case, and concluded it stood for the proposition that "a substantial change in circumstances" must be shown to justify changing a prior order of the court under § 105, and *no* change of circumstances had been shown by the debtors in *Bryant*.[53] The bankruptcy court noted there was no basis for injunctive relief in that case, as the only basis for asserted relief was to forestall the creditor, and the public interest would be violated if the bankruptcy court's prior final order was not given effect.[54] Reimposition of the automatic stay

---

[49] *Id.* at 954.

[50] *In re Bryant*, 296 B.R. 516, 517 (Bankr. D. Colo. 2003).

[51] *Id.*

[52] *Id.*

[53] *Id.* at 519. The bankruptcy court in *Bryant* next concluded the requested relief had to be brought via an adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7001(7), *id.* at 520, but the proper procedure is not an issue herein so this portion of the *Bryant* case is not applicable.

[54] *Id.*

16

was *denied* in the *Bryant* case.

First, the facts of *Tenver, Inc.* are not similar to those herein. Here, Debtors seek reimposition of the automatic stay while they seek modification of their Chapter 12 plan. But they seek that reimposition months after the stay was lifted, and after Banner Capital Bank had already renewed its request for sale in its state court foreclosure suit, received an order on that request, and obtained a sale date for the real property. In addition, like in *Bryant*, there is no "substantial change in circumstances" herein to support altering the final order of this Court on the matter—the confirmation order of Debtors' Chapter 12 plan. The only change in circumstances alleged is a hope that Debtors are able to obtain enough financing or sale of real property to continue their reorganization efforts. The Court concludes that hope is not enough.

When considering the probability of success on the merits, the first factor for injunctive relief, the Court considers Debtors' likelihood of a successful reorganization,[55] *i.e.*, the likelihood Debtors' motion to modify their confirmed Chapter 12 plan will be successful under § 1229. The Court finds

---

[55] *See Cantrell Drug Co. v. United States (In re Cantrell Drug Co.)*, 585 B.R. 555, 585 (Bankr. E.D. Ark. 2018) (assessing request for reimposition of the automatic stay, considering probability that the movant would succeed on the merits as "the likelihood of a successful reorganization").

little likelihood of a successful plan modification here. Under § 1229, to modify a confirmed Chapter 12 plan, a debtor must show that the proposed modification complies with §§ 1222(a), 1222(b), 1223(c), and all requirements of 1225(a).[56] The Court finds Debtors have not shown they would be successful meeting that burden, under the facts as they now stand.

Regarding Banner Capital Bank, at the time Debtors filed their bankruptcy petition on February 25, 2021, Debtors reported their debt to Banner Capital Bank as $1,292,234.85, secured in their real property in Rawlins County, Kansas for $1,096,300, with the remaining $195,934.85 unsecured.[57] At the time Debtors proposed their latest amended plan, the balance of Banner Capital Bank's claim had risen to $1,453,784.19, with Debtors valuing the real property securing the claim at $1,527,700.[58] At the hearing held on Debtors' motion for temporary restraining order, counsel for Debtors estimated Banner Capital Bank held only an approximately $100,000 equity cushion.[59]

---

[56] *See In re Huninghake*, __ B.R. __, No. 21-40090-12, 2023 WL 8726160, at *8 (Bankr. D. Kan. Dec. 15, 2023) (applying subsection (b)(1) of § 1229, "which requires that 'any modification' must comply with § 1222(a) (mandatory plan provisions), § 1222(b) (permissible plan provisions), § 1223(c) (presumption regarding a holder of a secured claim and accepting or rejecting a plan, as applicable therein), and § 1225(a) (confirmation standards)").

[57] Case No. 21-10123, Doc. 1 p. 24.

[58] *Id.*, Doc. 85 p. 12-13.

[59] Counsel estimated Banner Capital Bank was approximately $100,000

In part, Debtors seek to sell off some of the real property pledged to Banner Capital Bank to make their delinquent payments. Selling real property, not to reduce debt load, but to make payments on that debt load, is not a long-term solution to Debtors' poor financial condition. Debtors are currently $189,153.71 delinquent on the payments required by their Chapter 12 plan, not to mention the amount they allegedly owe to First State Bank McCook that is obviously not addressed in their plan. Even if Debtors were able to use the entire $155,000 from the proposed sale of real property (unlikely, as that collateral is undoubtedly security for the Bank), the additional $100,000 financing is barely enough to make the payments called for by Debtors' plan, leaving the payments on the new $100,000 financing unattainable, and the debt to First State Bank of McCook entirely unaddressed. There are also likely increased attorneys' fees, and expenses owed to secured creditors herein. As to feasibility alone, it appears unlikely Debtors can show their proposed modification would be granted under § 1229(b)(1)'s reference to the § 1225(a) confirmation requirements. It appears unlikely Debtors could also show Banner Capital Bank will remain adequately protected.

The additional factors for injunctive relief—the presence of irreparable

_____

oversecured on a payoff amount of $1,450,257.80.

harm in the absence of preliminary relief, the balance of equities, and the public interest—are likely either neutral, or not applicable. Debtors acknowledge the state court has already ruled that Kansas foreclosure laws apply to the security interest on their real property, and therefore, presumably, Debtors will have a redemption period after the foreclosure sale. Both the equities and the public interest are equally balanced. Ultimately, the Court rests its decision on Debtors failure to show a substantial likelihood of prevailing on the merits.

The Court concludes there is no substantial change in circumstances, and no extraordinary circumstances that would justify reimposition of the automatic stay under § 105(a) or Rule 65.[60]

Debtors' confirmed plan proposed very thin margins from the beginning. Even those estimates supporting the narrow margins proved to be too generous, as Debtors have struggled to make every plan payment required by their confirmed plan. Debtors ask this Court to grant an "extraordinary remedy" under Rule 65(b), but the facts of this case do not

---

[60] *See e.g.*, *In re Roberson*, No. 18-05432-5-JNC, 2020 WL 6265062, at *10 (Bankr. E.D.N.C. Oct. 23, 2020) (finding no "extraordinary circumstances" were present to reimpose the automatic stay where the foreclosure proceeding at issue had been pending for five months, the debtors were aware of it, the default by the debtors occurred even earlier, and the creditor had relied on the finality of two confirmed plans of reorganization that detailed when the stay would terminate, and the debtors waited until "mere days before the foreclosure auction" to seek relief).

justify that relief.

## III.   Conclusion

By this Memorandum Opinion and Order, the Court memorializes its denial of Debtors' motion for temporary restraining order.[61] Debtors failed to carry their burden to show they are entitled to relief under Rule 65(b).

Because Debtors' Chapter 12 bankruptcy case has been dismissed, the Court's jurisdiction over the adversary complaint was not retained in that dismissal order, and the claim sought in Debtors' adversary proceeding is now likely moot, Debtors should either file a voluntary dismissal of this action under Federal Rule of Civil Procedure 41(a), applicable to adversary proceedings via Federal Rule of Bankruptcy Procedure 7041, or show cause why this case should not be dismissed by Court order. Failure to file a voluntary dismissal or a statement showing cause, within fourteen days of the entry of this Memorandum Opinion and Order, will result in this Court's *sua sponte* dismissal and closure of this adversary proceeding.

**It is so Ordered.**

*** 

---

[61] Adv. No. 23-5040, Doc. 4.